ASHTABULA RAPID TRANSIT CO. V. LIBBIE J. B. STEPHENSON.

1. EVIDENCE TENDING TO CREATE SYMPATHY INCOMPETENT.

In an action against a street railway company for personal injuries sustained by a woman, evidence as to the number of children she has is incompetent and its admission for the purpose of showing not only that she had a family of children and that they were dependent upon her for support, is prejudicial, especially where there is nothing in the charge of the court to modify or retract the effect of this evidence upon the sympathy of the jury, but instead the jury were directed to consider all the evidence introduced, to consider all the circumstances and make a fair and reasonable compensation for the injury sustained.

2. PREJUDICIAL ERROR PRESUMED, WHEN.

The admission of incompetent evidence in a trial to a jury, from the record of which it does not appear that the jury disregarded it, the presumption of law that prejudicial error resulted against the party against whom it was introduced must prevail, and judgment should be reversed therefor. Rule applied to the admission of evidence, in an action for personal injuries, as to the number of plaintiff's children and their dependency upon her for support.

3. ATTORNEY FEES RESTRICTED TO EXEMPLARY DAMAGE CASES.

Attorney fees may be allowed in cases calling for exemplary damages, that is, when there is malice, insult, oppression or moral wrong, or wantonness, which is equivalent to malice, but such damages cannot be allowed as part of the compensatory damages in actions for personal injuries.

4. RULE AS TO NOTICE TO AGENTS OR SERVANTS.

Notice to an agent or servant of a corporation in respect to a matter over which he has control, is notice to the company, but it cannot be said that notice to a man whose business was to shovel snow off the track of a street railway, and who had nothing to do with the movement, control or management of a snow plow, which was left in the street, is notice to the company that horses had been frightened by it.

5. NON EXPERT TESTIMONY OF INJURED PERSON'S CONDITION.

A non-professional, witness who has had opportunities to observe a sick or injured person, may give in evidence his opinion of the condition of such person in respect to his being weak and helpless, and of the degree of suffering which he apparently endured, provided such evidence is founded on his own observation of the person to whom his evidence relates and is limited to the time that the person was under the observation of the witness.

6. EXPERT OPINION EVIDENCE AS TO NATURE OF INJURY.

The expert opinion of a physician in an action for personal injuries, as to the probable result or the permanency of injuries received, is competent and

need not be confined simply to showing that such results followed more often than otherwise. It is also competent to show that certain injuries are always permanent, or, if sometimes permanent and sometimes not, that also may be shown; all are proper matters for the jury. Thus the testimony of a physician that "such an injury might produce very disastrous effects—I should fear it," is not improper.

### HEARD ON ERROR.

BURROWS, J.

In the case of the Ashtabula Rapid Transit Company against Libbie J. B. Stephenson, the defendant in error recovered in an action in the court of common pleas for injuries by reason of the negligence of the Rapid Transit Company leaving upon their track in the streets of the city of Ashtabula a snow plow, by which a horse drawing the vehicle in which she was riding was frightened and she thrown to the ground and injured.

Many grounds of error are alleged in the motion for a new trial and in the petition in error, which we shall not notice except in a general way. The record shows that evidence was allowed upon the trial on the part of the plaintiff below as to the number of children she had, and tending to prove that they were dependent upon her for support. The admission of this evidence we think was erroneous. The law upon this subject has lately been very clearly settled by our Supreme Court in Galion v. Lauer, 55 Ohio St. 392 [45 N. E Rep. 1044]. I read the syllabus:

"1. In an action against a municipal corporation to recover for injuries caused by a defective sidewalk, evidence that the plaintiff was married and had a family of small children depending on him for support is incompetent. The tendency of such evience is to enhance the damages beyond the sum legally recoverable.

"2. Whether or not the presumption would arise from such evidence, alone, that the verdict had been affected thereby, and the evidence therefore prejudicial, yet such presumption should be held to exist where in such case the court said in its charge, that the jury in estimating the damages, might among other matters, consider the ability of the plaintiff 'to labor and earn money, * * * and to provide for himself and family before and after the accident.'"

So here we have the rule very clearly laid down, that the introduction of such evidence is incompetent and erroneous, and that it would be presumed to be prejudicial, where, as in Galion v. Lauer, *supra*, the court charged the jury that they might consider, in estimating the damages, the ability of the plaintiff to labor and earn money and provide for himself and family.

Such evidence was admitted in this case against the objection of the defendant below. The plaintiff was inquired of in respect to her family as follows:

"Q. What is your age now? A. I am forty-eight.

"Q. Where is your family? A. Indianapolis.

"Q. Of whom do they consist? A. Of my son and two daughters and a little boy, four children.

"Q. Who supports and maintains them?

"Mr. Hall: I object to that.

"Judge Sherman: We insist upon the question.

"The Court: She may answer subject to objection.

"Counsel for defendant except.

"A.   For the immediate past year or more, my son.

"Q.   What is the age of your son ?   A.   Twenty-two.

"Mr. Fitch:   I ask that the answer just before the last one be withdrawn.

"The Court:   Any objection to excluding it ?

"Mr. Laughlin:   Yes, sir.

"The Court:   It may remain.

"Counsel for defendant except."

I believe the record shows the ages of the other children, some of them quite young.

On page 45, while the plaintiff below attempted to show her condition of health by Mr. Freeman before the accident, he goes on to state that he lived neighbor to her, and knew her condition, and at last:—

"Q.   You may state, Mr. Freeman, what was her condition of health when she resided in Geneva, and while you knew her ?

"A.   Well, now, her condition of health while I knew her I should say would be quite good,—not one of the very robust of all, but good enough to superintend her business and attend to her household duties, and care and provide for four children, and also to help care for an invalid mother.   That was her condition of health during the time she was a neighbor of mine, and my knowledge of her."

That was received under objection, to a question that was entirely competent.

Mr. Hall asked to have it all excluded, and part of it was very competent and part of it might have been prejudicial.

Now, at the time her sister was on the stand, this question was up again, the question as to her condition of health was asked and objected to:

"Q.   When she returned and was with you, up to the time as you say of the accident, state to the court and jury what was her condition of health ?   A.   Her health was good up to that time.

"Q.   How?   A.   Up to the time of the accident her health was good.

The defendant asked to have the answer excluded and it was overruled and the defendant excepted.

"Q.   What was she engaged in, if anything, from October down to the time of the accident, at your place?   A.   She was caring for her daughter; she was sick with me.

"Q.   Her daughter was ?   A.   Yes, sir.

"Q.   What was the age of her daughter ?   A.   She was about eighteen.

"Q.   Who took care of her daughter from the time she came?   A. I cared for her until I was obliged to send for my sister, she was so very sick.

"Q.   When she came back what did she do ?   A.   She cared for her with my help.

"Q.   How many children has she ?   A.   Four.

"Q.   Can you give their ages ?

"Mr. Hall: I object, how is that material ?

"The Court:   As tending to throw light upon her necessity to perform work if she had the care of her family, as bearing upon her condition of health.

"Counsel for defendant except.

"A.   Her youngest daughter I think is eighteen.

"Q. Give the age of the others? A. The youngest I think is from twelve to fourteen, I could not tell just how old.

"Q. Is that a girl? A. It is a boy, and the oldest boy is about twenty-one or twenty-two; twenty-two perhaps, and the oldest girl is twenty or twenty-one, I do not just know."

Now that evidence was admitted to throw light upon her necessity to perform work, if she had the care of the family. If it was to throw light upon her ability to perform work, then it might reflect upon her condition of health, but the necessity to perform work would be quite a different matter. So this evidence was admitted for the purpose of showing, not only that she had a family of children, but that she was under the necessity to support them; that they were dependent upon her for support.

Evidently the court and counsel were misled by the ordinary case of recovering damages in an action for causing death, where the damages are to be measured by the benefits received by the children or next of kin. Without much reflection, this evidence was put in this case, where the only effect of it could have been for the jury, through sympathy or otherwise, to say, as they naturally would, when they retired to make up their verdict in estimating their amount: "Why this poor woman has four children to take care of and we ought to give her something commensurate with these circumstances; this situation of things we ought to take into account."

In the charge of the court there is nothing at all to modify or retract or do away with the effect of this evidence. The court simply tells the jury they are to take into consideration all the circumstances and to make her whole.

"If you find for the plaintiff you should determine it in the light of the evidence that has been introduced in the case. What you say in your judgment and good sense would be a fair and reasonable compensation for the injury that she has sustained."

They were to take into consideration the evidence that had been introduced, and that evidence was that she had a family of four children depending upon her for support. We may well assume that upon the trial in the court below, this was a matter that was urged upon the attention of the court, inasmuch as learned counsel while arguing the case before us, when this point was suggested, urged it to us as a very important matter. We are not able to determine, from this record, that the jury did not take it into consideration. If they were not specially invited to do so by the charge of the court, they were allowed to do so, and we think the presumption of law as to prejudicial error must prevail in this case and the judgment ought to be reversed upon this ground.

There is another ground of error alleged in this petition in error, which we think is fatal to this judgment. The court allowed the jury, or rather directed the jury, to take into consideration reasonable attorney fees in estimating the damages occasioned to the plaintiff; fees of the attorneys in the prosecution of the suit. Now I am not disposed to take time to read the authorities, but we are quite clear in this conviction, that attorney fees in this sort of action can only be allowed as compensation, or as compensatory damages, when the circumstances and facts in the case would entitle the plaintiff to exemplary damages. We think that is the result of all the cases, that when attorney fees are allowed in a case calling for exemplary damages, they are allowed not by way of punishment, but as a part of the compensatory damages; yet

Transit Co. v. Stephenson.

they are never to be allowed except where there is malice, insult, oppression or moral wrong; ordinarily in this state there are no attorney fees allowed in cases; they are not taxed in some states as part of the costs; the recovery is for the amount due for the actual injury or actual damages upon the contract or in tort. It is only in cases where there is the additional circumstances or fact of oppression, insult or malice, that attorney fees can be taken into consideration by the jury.

We have been referred to cases elsewhere which hold the doctrine that in cases where there is wantonness in the commission of the injury, attorney fees may be allowed; but where there is wantonness then the plaintiff is entitled to exemplary damages, another word for the same thing; doing an injury wantonly with utter disregard of the rights of others, doing it with a malicious motive is only another way of defining malice. For these two reasons, and these two reasons only, this judgment is reversed.

Some questions were made in the trial, and perhaps might be mentioned if this case should it be tried again, that I will notice. One was the question of notice that this snow plow was standing upon the track, near the end of the track upon the street, and that horses were frightened and the servants of the company had observed that or had been notified of it.

Notice to the directors or officers of the company I believe is generally held to be notice to the company; they are the representatives of the company, the general representatives, but it can hardly be said that notice to a man whose business was to shovel off the track and had nothing to do with the movement, control or management or care of this snow plow, was notice to the company that a horse had been frightened by it. I think the rule is that notice to an agent or servant of a corporation in respect to a matter over which he has control in respect to which he has been entrusted to do something, is notice to the company. The court is not responsible for this suggestion entirely, but I think the books will bear out the statement that it was only those servants or agents who had something to do with maintaining that snow plow there or moving it elsewhere, some control over it, as to the fact that it frightened horses; only as to those would it be notice to the company.

Another question was as to this lady's health and condition, both before and after this injury. Hardly a question was asked in respect to her health, before or after this injury, but what there is an objection or exception to it. We find that all those questions were entirely competent. It is opinion evidence, and whether the interrogator says to the witness; "In your opinion from what you saw and observed what was her condition of health;" or whether the interrogator says, "How did she seem, or appear, or what was her apparent health," it means all the same thing. It is merely a play upon words. Of course, if a witness has not seen the person and has no means of observation, his testimony is good for nothing, and ought not to be permitted at all; if they have, from what are they speaking? From observation. What sort of testimony are they giving? Opinion evidence; always opinion evidence. What are they testifying to, facts or appearances? Always to the appearances, nothing else. If they go beyond that, they are expert witnesses, not non-experts, giving an opinion. You saw a man at a certain time? Yes. Was he drunk? Would that be competent, or must I ask "did he seem to be drunk, did he appear to be drunk?" It is always a question of appearance; it means the same thing. Now what do you say

was her condition of health from your observation, as you observed her? Why, I say that she was robust, healthy. Now what does it mean? Why it is the way she appeared. It seems to us it is sticking in the bark, that every question that must be put to the witness after showing her knowledge and familiarity, you have to ask them what sort of an impression did it make upon you at the time—how did she seem.

That a witness has a right to give an opinion to the fullest extent has been settled by our Supreme Court in Village of Shelby v. Clagett, 46 Ohio St. 549 [22 N. E. Rep. 407; 5 L. R. A. 606]. "A non-professional witness who has had opportunity to observe a sick or injured person may give in evidence his opinion of the condition of such person, in respect of his being weak and helpless or not, and of the degree of suffering which he endured, provided such opinion is founded on his own observation of the person to whom his evidence relates, and is limited to the time—that the person was under the observation of the witness."

Not an opinion as to their apparent condition, but may give his opinion of the condition in respect to his being weak and helpless or not. Turning to what Judge Bradbury says upon this question, page 552:

"The evidence admitted over the objection of the defendant below related either to the condition of Mrs. Clagett's health, or to the pain she suffered; and, as far as we deem necessary to examine it, was given by non-professional witnesses, and partakes of the nature of opinion more than of fact. For instance Mrs. Webber testified that 'she (Mrs. Clagett) was in a very helpless condition, never leaving her bed, except to have her bed made each day, so far as I know;' and again 'her suffering was very intense, and often seemed more than she could bear.' "

Now this question was before the Supreme Court: "These statements, except that portion of the first one respecting her 'never leaving her bed etc.,' are in a strict sense, opinions, or inferences drawn from what the witness had observed while in attendance about the person of Mrs. Clagett. Now, the witness could portray to the jury only in a faint and imperfect way the scene in the sick chamber as it presented itself to her, and upon which she based her statements that Mrs. Clagett 'was very helpless * * * and suffered intensely * * * .' The tones of voice, the expressions of the face, and the movements of the limbs, which are the natural language of pain, so readily and clearly understood by those about the sufferer, cannot be reproduced so as to impress the jury as they did the witness; neither can those appearances that accompany and establish the fact of weakness and helplessness. Therefore, to say that those about a sick or injured person shall not be permitted to give in evidence their opinion, based on observation, of the condition or suffering of the patient, is to exclude from the jury the only efficient proof of those facts. The rule admitting such evidence is one of necessity. Where the fact to be established must 'be derived from a series of instances passing under the observation' of witnesses 'which yet they never could detail to the jury,' opinion will be received."

Without reading authorities quoted by this learned judge to sustain his opinion, we think this authority goes to the full length, supporting every question that was asked in this case, so far as we can now recall it.

There is another question made as to the testimony of Dr. Palmer. The plaintiff below was seeking to establish, if she could, the fact that

Transit Co. **v.** Stephenson.

the injuries from which the plaintiff was suffering were permanent in their character. This is expert opinion evidence, opinion evidence still, but expert opinion evidence; a physician is asked what would be the probable result to the sufferer from such injuries, as to their permanency—I am not giving the exact torm of the question—and he says "such an injury might produce very disastrous effects, he should fear it."

The claim is made by counsel here for the plaintiff in error, that the only proper question is to show what would be the probable results, what are the probable results that happen more often than otherwise, that are more likely to happen. Suppose a physician cannot tell, there is no particular probability about it; may he not give evidence tending to show that the tendency of such an injury would be to produce a progressive disease, or tend to permanency, that it might do it? We think so; we think it is proper evidence and not confined simply to showing that it more often is the otherwise. If a certain injury would produce permanency always, that might be shown; if it would sometimes be permanent and sometimes not, that might be shown, or if it would be rare that it would be permanent, it might be shown; they are all proper matters for the jury. So on account of the few errors mentioned the case is reversed and remanded to the court of common pleas.